IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CFP ACQUISITIONS, INC.,** | )<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) Case No. 18-CV-602-TCK-JFJ |
| **C. DAVID RHOADES, solely in his Capacity as Receiver in the Receivership Estates of LEES SPECIALTY COMPOUNDING, LLC, THE APOTHECARY SHOPPE, LLC, THE APOTHECARY SHOPPE OF B.A., LLC, GETMAN-APOTHECARY SHOPPE, LLC, and LEES SPECIALTY COMPOUNDING, INC.,** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| **FIFTH THIRD BANK, an Ohio banking corporation,** | )<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is the Motion to Dismiss Amended Complaint of Plaintiff CFP Acquisitions, Inc. ("CFP") filed by Fifth Third Bank (the "Bank"). Doc. 16. In its motion, the Bank asserts that CFP's First Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* CFP opposes the motion. Doc. 20.

This lawsuit arises from the sale of assets of a group of pharmacies in receivership. Marcain Properties, LLC ("Marcain") initially bought the assets from the Receiver, and subsequently conveyed them to CFP. CFP, in turn, filed the pending suit against the Receiver and the Bank, the

pharmacies' creditor, alleging various causes of action based on the Receiver's failure to convey restrictive covenants held by the pharmacies.

## I. Background

CFP filed this action in Tulsa County District Court on May 7, 2018.  Doc. 3, Notice of Removal.  On November 20, 2018,  the Bank and  C. David Rhoades, in his capacity as Receiver in the Receivership Estates of Lees Specialty Compounding, LLC, The Apothecary Shoppe, LLC, The Apothecary Shoppe of B.A., LLC, Getman-Apothecary Shoppe, LLC, and Lees Specialty Compounding, Inc., removed the case to this Court pursuant to 28 U.S.C. §§1441(a) and 1442(a)(3). Doc. 3.  On April 19, 2019, CFP filed its First Amended Complaint.  Doc. 12.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true."  *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted).  "The allegations must be enough that, if assumed to

be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

On a Rule 12(b)(6) motion, the Court may consider—in addition to the allegations of the complaint—documents "incorporated by reference in the complaint" and documents "referred to in the complaint." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) (quoting *GFF Corp. v. Associated Whole. Gro., Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)).

### III. Allegations of the First Amended Complaint [and Referenced Documents]

CFP, an Oklahoma corporation, is the successor by assignment to Marcain Properties, LLC ("Marcain"). Doc. 12, ¶1. Defendant C. David Rhoades is the duly appointed and acting Receiver of the receivership estates of Lees Specialty Compounding, LLC, The Apothecary Shoppe, LLC, The Apothecary Shoppe of B.A., LLC; Getman-Apothecary Shoppe, LLC, and Lees Specialty Compounding, Inc. (collectively, the "Pharmacies") in Tulsa and Broken Arrow, Oklahoma. Doc. 12, *Id.*, ¶2 (citing *Fifth Third Bank v. Lees Specialty Compounding, LLC v. Fifth Third Bank*, 15-cv-631-TCK-FHM ("Receivership Case"). The Bank is an Ohio banking corporation and is the plaintiff in the Receivership Case. *Id.*, ¶3. The Receiver was appointed upon motion made by the Bank in the Receivership Case. *Id.*, ¶4. The Bank provided more than $13 million in financing to the Pharmacies and, in exchange, held a secured interest in the Pharmacies' assets. *Id.*, ¶¶1, 14-21.

On March 1, 2018, the Bank and the Receiver filed a joint motion in the Receivership Case (the "Sale Motion") to sell "Assets" of the Estates as that term was defined in and pursuant to an Asset Purchase Agreement dated February 26, 2016 (the "APA") between the Receiver and

Marcain. *Id.*, ¶5. Among the Assets to be conveyed pursuant to the APA were certain covenants not to compete and not to solicit employees and customers (particularly described in §1.1(e) of the APA (the "Restrictive Covenants"). *Id.*, ¶6.[1]

The Bank provided more than $13 million in financing to the Pharmacies and, in exchange, held a secured interest in the Pharmacies' assets. *See* Receivership Action, Doc. 2, ¶¶1, 14-21. On November 3, 2015, after the Pharmacies defaulted on their loans, the Bank filed suit in this Court, seeking appointment of a receiver to hold and administer the Pharmacies' assets. *Id.* Among the assets the Pharmacies possessed were covenants with LJS Holdings, Inc. and its shareholders (the "LJS Parties") that prevented the LJS Parties from (1) competing with the Pharmacies or (2) soliciting employees or customers of the Pharmacies (the "Restrictive Covenants"). Doc. 12, FAC ¶6.

On November 16, 2015, the Court appointed the Receiver to hold and preserve the assets of the Pharmacies pending their potential sale. *Id.*, ¶2. On February 26, 2018, the Receiver entered into the APA to sell the assets of the Pharmacies to a potential buyer, Marcain. *Id.*, ¶5. As of March 1, 2016, the APA included a provision for the Receiver to transfer the right to enforce the Restrictive Covenants. *Id.*, ¶6.

On March 11, 2016, the Pharmacies filed a motion to intervene in the Receivership Case, seeking leave to file an objection to the Sale Motion based in part on their claim that the Restrictive

---

[1] The Restrictive Covenants were made and given by (a) LJS Holdings, Inc. and its shareholders (the "LJS Parties") as part of the transaction by which Defendant Lees Specialty Compounding, Inc. acquired all of the membership interest in the goodwill of Defendants, The Apothecary Shoppe, LLC and The Apothecary Shoppe of B.A., LLC; and (b) the shareholders of Getman-Apothecary Shoppe, LLC (referred to herein collectively with the LJS Parties as the "Covenant Grantors"), as part of the transaction by which Defendant Lees Specialty Compounding, Inc. acquired all of the membership interests in and the goodwill of Defendant Getman-Apothecary Shoppe, LLC). Doc. 12, n. 1.

Covenants could not be assigned to or enforced by a purchaser under the APA. *Id.*, ¶7. On April 5, 2016, they filed an objection to the Sale Motion, in which they objected to purchaser's acquisition and enforcement of the Restrictive Covenants against the LJS parties. *Id.*, ¶8.

Prior to the April 19, 2016 hearing, during which the Pharmacies' objections were to be heard, the Receiver discussed with Marcain the possibility of the Receiver retaining and enforcing the Restrictive Covenants on Marcain's behalf after the sale. Doc. 3, Ex. A, State Court Petition, ¶18.[2] At the sale hearing on April 19, 2016, counsel for the Bank told the Court that the Restrictive Covenants would not be conveyed, thereby resolving the Pharmacies' objection. FAC, ¶10. Counsel for the Pharmacies confirmed that "[t]he movants have withdrawn their request to assign the noncompetes [*sic*], and so that does moot the objections that we had." *Id.* No further references to the Restrictive Covenants were made by any party, including the Receiver or counsel. *Id.*

On April 21, 2016, the Receiver suggested to Marcain that it could engage him to provide services—including but not limited to enforcement of the Restrictive Covenants—while the estate remained open. FAC ¶19. During the conversation, the Receiver told Marcain this arrangement had been "functionally approved" by the Bank's counsel at Katten Muchin Rosenman LLP

---

[2] The Court notes that the First Amended Complaint omitted the following paragraph which had been included in the original Petition filed in state court:

> 18. Although the Receiver had discussed with Marcain the possibility that the Restrictive Covenants could be retained by the Receiver and remain enforceable by the Receiver for the benefit of Marcain and its successors, *Marcain had agreed to no such alteration to the APA by the Sale Hearing.* (emphasis added).

Doc. 3 at 22. Paragraph 18 of the removed petition is an admission that is inconsistent with CFP's claims for relief, and a plaintiff cannot cure pleading deficiencies by removing allegations by amendment. *See*, *i.e.*, *Saenz v. Ledbetter*, No. 5:16-CV-0063-ODW (SK), 2017 WL 2626987 at *6 (C.D. Cal. June 15, 2017) (holding that "[i]f the deficiencies in a complaint can only be cured by amendments that contradict the allegations in the original complaint, leave to amend would be futile.") (internal citation omitted).

("Katten"), and that Katten was drafting the appropriate documents to structure and implement this process. *Id.* On information, on April 21, 2016 Katten transmitted to the Receiver an agreement "to include the transition services part," which the Receiver, in turn, forwarded to Marcain representatives. *Id*.

The TSA, which was executed by both the Receiver, on behalf of the Seller, and by Marcain, provided, in pertinent part, that the Seller (Receiver) would provide services requested by the Buyer (Marcain), as necessary or desirable for the operation of the Pharmacies, and that:

> b. [T]he Seller shall not be required to incur any liabilities on behalf of the Buyer or act as an agent for the Buyer unless specifically agreed to by the Parties in writing.
>
> c. Prior to each request for Transition Services, *the Buyer and the Seller shall agree, in writing, to the fees the Buyer shall pay the Seller for such Transition Services and a payment schedule for such fees to be paid on a monthly basis*.

Doc. 16, Ex. A at 2 (emphasis added).

On or about May 6, 2016 (the "Closing Date"), Marcain paid or caused to be paid the $2.35 million "Purchase Price" contemplated by the APA to the Receiver and, on information, the Receiver thereafter immediately wired the Purchase Price to the Bank. *Id.*, ¶13. The same date, the Receiver executed and delivered to Marcain a Bill of Sale dated effective as of the Closing Date conveying the Assets to Marcain and a "Transition Services Agreement" effective as of the Closing Date (the "TSA") pursuant to which the Receiver agreed to provide "Transition Services" to Marcain through December 31, 2018 (unless earlier terminated as provided in the TSA). *Id.*, ¶14.

Marcain's rights under and to the APA, the Bill of Sale, the Assets conveyed by the Bill of Sale and under the TSA were (with the Receiver's consent) assigned to CFP effective May 6, 2016

and currently are owned by CFP. *Id.,* ¶15.[3] The Receiver and (on information) the Bank were well aware as of the date of the Sale Hearing that (a) the APA had not been modified to delete the required transfer of the Restrictive Covenants to Marcain; and (b) Marcain would not close the APA unless the Restrictive Covenants were assignable to and enforceable by Marcain. *Id.,* ¶16.

Sixteen days after the Receiver sent Marcain the draft TSA, the sale was closed. FAC ¶¶51-52. *See also*, *Id.*, ¶¶19, 48; Ex. A (TSA); Ex. B (Closing Letter). The Closing Letter stated, in pertinent part:

> C. Restrictive Covenants
>
> > From the date of this Agreement, through the termination of the Transition Services Agreement dated as of the date hereof between Seller and Buyer, Seller shall defend, to the best of its ability, any challenge to the enforcement of the restrictive covenants contained in the Membership Interest Purchase Agreement dated December 20, 2013 among Lees Specialty Compounding, LLC and LJS Holdings, Inc. and others and restrictive covenants contained in that certain Membership Interest Purchase Agreement dated December 20, 2013 among Lees Specialty Compounding, LLC and Lindy Rowland and others.

*Id.*, Ex. B.

The Bank's counsel submitted to the Court a proposed sale order which contained misrepresentations. FAC ¶¶12, 17. The finding of fact made at paragraph 6(K) of the Sale Order states:

> At the Sale Hearing, **Receiver represented to the Court** it has agreed with the Lees Parties and [Marcain] that . . . (ii) ***"the restrictive Covenants shall not be assigned to [Marcain] under the Asset Purchase Agreement or otherwise."***

---

[3] In its Motion for Leave to File Supplemental Response in Opposition to Motion to Dismiss (Doc 25), CFP correctly noted that the Bank, in its Reply, states: "As to its contract claims, Plaintiff acknowledges that although written authorization by the Receiver was required to assign Marcain's rights, no such authorization occurred." However, ¶15 of the FAC explicitly states that the assets were—with the Receiver's consent—assigned to CFP.

FAC ¶17 (emphasis in original). CFP alleges this "finding" as drafted by Katten is false because the Receiver made "absolutely no representation to the Court with respect to the Restrictive Covenants[]" and that "the finding in paragraph 6(K) falsely suggests that as of the date of the Sale Hearing, the Receiver had reached agreement with Marcain to delete the Restrictive Covenants from the Assets to be conveyed under the APA." *Id.* Moreover, CFP asserts that "[a]t the time the R&R and Sale Order were submitted to Magistrate Judge McCarthy, Katten knew that no such agreement existed between Marcain and the Receiver, and that the 'finding of fact' in paragraph 6(K) of the Sale Order was untrue." *Id.*

On April 21, 2016 (two days after entry of the Magistrate Judge's Report and Recommendation that the Sale Order be entered in the form drafted by Katten), the Receiver suggested to Marcain's representatives that they ". . . engage myself and the Defendants to provide some consulting services . . . that should keep the non-competes in force." *Id.*, ¶19. Additionally, the Receiver stated that this concept was "functionally approved" by [Katten] and that [Katten] was drafting the appropriate documents to structure and implement this process. *Id.* On information, on April 21, 2015, Katten transmitted to the Receiver an agreement "to include the transition services part" that the Receiver in turn forwarded to Marcain representatives. *Id.*[4]

On April 27, 2016 (prior to the Closing Date) Marcain's representative sent an email to the Receiver reiterating the importance of the Restrictive Covenants to Marcain to prevent Marcain from buying "a lot of nothing." *Id.*, FAC ¶20. The Receiver responded that day by quoting "the lawyers" [Katten] as saying:

> If the rent is paid and the transition services agreement ("TSA") is in place (not otherwise terminated for some reason) the estate needs to remain open for the receiver to complete his obligations under the TSA. As a result, the membership

---

[4] The First Amended Complaint's reference to "April 21, 2015" appears to be a scrivener's error, as all other allegations during this time period referred to events occurring in "2016."

> interest purchase agreement (which contain[s] the non-compete) remains in full force and effect as long as the estate is open and it has to remain open because you are required to provide services under the TSA for one year.

*Id.* On April 28, 2016, the Receiver, based upon the representations made to him by Katten, confirmed to Marcain that as long as the TSA was in place, the Restrictive Covenants would remain in force. *Id.*

On information, the Bank or its counsel Katten (a) intentionally misled the Receiver and thereby induced him to make the representations to and agreements with Marcain as described above and as referenced below, (b) intended that the Receiver make those representations to and agreements with Marcain to induce Marcain to close the APA (without receiving an assignment of the Restrictive Covenants and without receiving a corresponding reduction to the Purchase Price), and (c) knew, or should have known, that the representations and agreements made by the Receiver to and with Marcain were materially false and unenforceable. *Id.*, ¶21.

On the strength of the assurance that the Receiver could enforce the Restrictive Covenants for the benefit of Marcain and its successors through their stated expiration of December 2018, Marcain agreed to close the APA without receiving an assignment of the Restrictive Covenants and without receiving a corresponding reduction to the Purchase Price. *Id.*, ¶22. The Bank and Katten clearly were aware of Marcain's reliance, as on May 3, 2016, the Receiver wrote the Bank and Katten saying (among other things) "[Marcain] will sign the TSA . . . . They will pay my fees monthly. . . . If there is a challenge to the [Restrictive Covenants], then we will defend that." *Id.*

At least two Covenant Grantors who agreed to be bound by the Restrictive Covenants (the "Covenant Violators") have openly violated them. *Id.*, ¶23. CFP, as Marcain's successor, has demanded that the Receiver enforce the Restrictive Covenants against the Covenant Violators on CFP's behalf. *Id.* No enforcement actions have been taken by the Receiver against the Covenant

9

Violators. *Id.* CFP alleges that the Receiver has not enforced the Restrictive Covenants because they are not enforceable by the Receiver for CFP's benefit, in part due to the Bank's assurance to Magistrate Judge McCarthy and to the Lees Parties that "we've elected not to assign [the Restrictive Covenants], which essentially moots the [Lees Parties'] objection." *Id.*, ¶24.

The Bank and the Receiver have failed to provide an enforceable procedure by which the Receiver could and would enforce the Restrictive Covenants for Marcain's and CFP's benefit. *Id.*, ¶29. The Bank and its counsel Katten had a duty to disclose to the Receiver, Marcain and CFP the Bank's true intention to close the APA irrespective of the lack of enforceability of the Restrictive Covenants, yet falsely represented to, and assured the Receiver that the Receiver could provide to Marcain and CFP an enforceable procedure by which the Receiver could and would enforce the Restrictive Covenants for Marcain's and CFP's benefit. *Id.*, ¶31. On the strength of the Bank's and Katten's assurances and agreements, the Receiver in turn assured Marcain that the Receiver could, and would, enforce the Restrictive Covenants for Marcain's benefit. *Id.* The Bank and its counsel Katten intended that in reliance on the Bank's and Katten's representations and assurances to the Receiver that the Receiver could enforce the Restrictive Covenants for Marcain's and CFP's benefit, the Receiver would make those same representations and assurances to Marcain and would induce Marcain to agree to close the purchase of the Assets without receiving an assignment of the Restrictive Covenants, and without receiving a corresponding reduction of the Purchase Price resulting therefrom. *Id.*, ¶34.

The Receiver in fact reasonably and detrimentally relied on the Bank's and Katten's representations, assurances and agreements to provide an enforceable procedure by which the Receiver could, and would, enforce the Restrictive Covenants for Marcain's and CFP's benefit by closing the purchase of the Assets without receiving an assignment of the Restrictive Covenants,

or a corresponding reduction of the Purchase Price resulting therefrom. *Id.*, ¶35. On the strength of the assurance that the Receiver could and would enforce the Restrictive Covenants for the benefit of Marcain and its successors through their stated expiration of December 2018, Marcain agreed to close the APA without receiving an assignment of the Restrictive Covenants and without receiving a corresponding reduction to the Purchase Price. *Id.*, ¶51. The Bank clearly was aware of Marcain's reliance, as on May 3, 2015, the Receiver wrote the Bank and its counsel saying (among other things) "[Marcain] will sign the TSA. . . . They will pay my fees monthly. . . . If there is a challenge to the [Restrictive Covenants], then we will defend that." *Id*.

CFP asserts the following claims:

1. breach of express or implied contract

2. equitable estoppel

3. promissory estoppel

4. quasi-contract

5. fraud/constructive fraud/negligent misrepresentation/fraudulent misrepresentation on the part of the Bank ("Fraud and Negligent Misrepresentation Claims")

6. reformation.

*Id.*, ¶¶25-58. It seeks an award of actual and punitive damages against both the Bank and the Receiver.[5]

The Bank moves for dismissal of all claims, arguing:

- CFP lacks standing to bring any tort or contract claims.

---

[5] The First Amended Complaint states that CFP does not seek personal liability of any type against C. David Rhoades in his individual capacity, and punitive damages are sought against the Estates "only to preserve CFP's rights to assert a priority claim to any of the Estates' assets that may now or hereafter come into existence." Doc. 12 at 15, n. 4.

- CFP's claim for fraud/negligence/misrepresentation is time-barred.

- CFP has failed to state claims for breach of contract or quasi-contract.

- CFP has failed to state claims for equitable estoppel, promissory estoppel, and fraud/negligence/misrepresentation.

**IV. Analysis**

**A. Express or Implied Contract (Claim 1)**

CFP concedes that it was not a party to the TSA and/or Closing Letter, which allowed Marcain to direct the Receiver's enforcement of the Restrictive Covenants.  FAC ¶22; Doc. 20 at 11-12.  However, it contends that the Bank's alleged encouragement of the Receiver to enter into an agreement with Marcain formed a completely separate contract between the Bank and CFP which required the Bank to ensure that the Restrictive Covenants were enforceable by the Receiver.

**1. Express Contract**

An express contract requires an offer or a "display of willingness to enter into a contract on specified terms, made in a way that would lead a reasonable person to understand that an acceptance, having been sought, will result in a binding contract." *Sharp v. Temple*, 294 B.R. 164, 170 (Bankr. N.D. Okla. 2003).  The First Amended Complaint alleges no facts to support a claim that an express contract exists between CFP and the Bank.

Moreover, the TSA between Marcain and the Receiver requires written consent of the Receiver to assign those rights.  Doc. 16, Ex. A, TSA, ¶4(j).  Where assignment of rights is prohibited without written permission, a complaint must be dismissed if it fails to allege the written permission was obtained.  *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1237 (10th Cir. 2014); *In re Kaufman*, 37 P.3d 845, 853 (Okla. 2001) ("[W]here the anti-

assignment provision is clear and unambiguous in its limitation of the power of the annuitant to sell, mortgage, encumber, or anticipate future payments, by assignment or otherwise, the restriction on alienability is valid."). The First Amended Complaint is devoid of any allegations establishing that Marcain obtained the written consent of the Receiver before assigning its rights to CFP.

Accordingly, CFP's claim for breach of express contract must be dismissed.

### 2. Implied Contract

Similarly, an implied contract requires "acts, where there are circumstances that show a mutual intent to contract." *Jones v. Univ. of Cent. Okla.*, 910 P.2d 987, 989 (Okla. 1995). By definition, equitable and promissory estoppel require a statement by the defendant to the plaintiff. *See Sullivan v. Buckhorn Ranch P'ship*, 119 P.3d 192, 202 (equitable estoppel requires "a false representation or concealment of facts"); *Barber v. Barber*, 77 P.3d 576, 579 (Okla. 2003) (promissory estoppel requires a "clear and unambiguous promise").

CFP's Amended Complaint fails to allege even a single interaction between the Bank and Marcain or the Bank and CFP, let alone an interaction that would evidence the "mutual intent to contract." Nevertheless, the First Amended Complaint asserts that Bank's attorneys communicated with the Receiver in anticipation that their statements would be relayed to Marcain. *See* ¶¶31, 37. However, because the Receiver is an agent of the court—and not of any other party in a bankruptcy action—statements made by the Receiver cannot be imputed to the creditor. *See Atlantic Trust Co. v. Chapman*, 208 U.S. 360, syllabus (1908) ("The receiver is not the agent of the plaintiff in the litigation, nor does the plaintiff have any control over him"); *In re Phillips*, 24 B.R. 712, 714 (Bankr. E.D. Cal. 1982) ("The receiver is not the agent of the plaintiff nor . . . acting on the plaintiff's behalf or under his control."). Accordingly, the Receiver's alleged statements

13

to Marcain cannot be imputed to the Bank, and CFP's claims for breach of an implied contract must be dismissed.

### B. Equitable Estoppel, Promissory Estoppel, Quasi-Contract and Reformation (Claims 2, 3, 4, 6)

Oklahoma recognizes "quasi contracts," which are also referred to as "implied-in-law" or "constructive" contracts. *T&S Inv. Co. v. Coury*, 593 P.2d 503, 504 (Okla. 1979) (distinguishing between quasi contracts, implied-in-fact contracts and express contracts). "A 'quasi' or constructive contract is an implication of law," *i.e.*, "the contract is a mere fiction, imposed in order to adapt the case to a given remedy," whereas an "implied-in-fact" contract is one in which the contract is a fact legitimately inferred." *Id.*

However, "quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue." *Parrish v. Arvest Bank*, 717 Fed. Appx. 756, 765 (10th Cir. 2017) (citing *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 374 P.3 820, 828 (Okla. 2016)). Here, an express written agreement between Marcain and the Receiver set forth the understanding of those two parties regarding the Receiver's obligation to enforce the Restrictive Covenants. Specifically, the TSA provided that Receiver would keep the receivership estate open, during which time he would be obligated to provide services to Marcain, including enforcement of the Restrictive Covenants.

Pursuant to the TSA, however, the parties were required to "agree, in writing, to the fees" Marcain was to pay for those services, as well as a monthly payment schedule for the fees. The Amended Complaint is devoid of any allegations that either Marcain or CFP reached an agreement with the Receiver for payment of fees in exchange for the Receiver's enforcement of the restrictive covenants. Accordingly, CFP's claims for equitable estoppel, promissory estoppel, quasi-contract and reformation must be dismissed.

### C. Fraud and Negligent Misrepresentation Claim (Claim 5)

In its Fifth Claim for Relief, CFP asserts a claim for "fraud/constructive fraud/negligent misrepresentation" against the Bank and a claim for "negligent misrepresentation o[n] the part of the receiver in reliance on Katten's misrepresentation." Doc. 12 at 12.

#### 1. Negligent Misrepresentation

As previously noted, CFP has alleged that the Bank, its counsel, Katten, and the Receiver knew or should have known that the Receiver "would not or could not provide a procedure by which the Restrictive Covenants could be enforced for the benefit of Marcain and CFP." Doc. 12, First Amended Complaint, ¶29. This argument is based on CFP's assertion that Oklahoma law prohibits the Receiver from enforcing the Restrictive Covenants because the Receiver did not continue to carry on the business of the Pharmacies. Doc. 20 at 22-23.

However, the plain language of the applicable statute provides, in pertinent part, that "[o]ne who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county . . . so long as the buyer, *or any person deriving title to the goodwill from him* carries on a like business therein." 15 O.S. §218 (emphasis added).

Here, Marcain and its successor in interest, CFP, have carried on a "like business," which derived substantial "goodwill" from the conveyance. *See Key v. Perkins*, 46 P.2d 530, 532 (Okla. 1935) (holding that goodwill passes in proportional share of the conveyance of assets). Accordingly, so long as CFP operates the like business, the Receiver, as holder of the covenants, has the legal power to enforce them.

Moreover, though, as contemplated by the TSA and Closing Letter, the Receivership also continues to "carry on a like business" because it has remained active to support the Pharmacies' business. *See* Receivership Case, 18-cv-602, Do. 69, Sale Order at p. 9, ¶4 (stating that "since

15

there will be other duties of the Receiver that have not been completed, the Receivership will remain in full force and effect."). The Receiver kept a portion of goodwill under 15 O.S. §218 by retaining the Restrictive Covenants rather than conveying them to Marcain. *See Perkins*, *supra.* And, according to the Amended Complaint, the Restrictive Covenants were highly valuable. FAC, ¶29 (alleging the Receiver's failure to enforce the restrictive covenants for Marcain's and CFP's benefit has damaged CFP in an amount in excess of $2.35 million). Accordingly, the Receiver retained an appreciable amount of the assets after the sale to Marcain.

### 2. Tort Claim (Fraud/Constructive Fraud, Negligent Misrepresentation, Fraudulent Misrepresentation)

#### a. Timeliness of Tort Claim

The Bank contends CFP's claim for fraud/constructive fraud, negligent misrepresentation and fraudulent misrepresentation (Fifth Claim for Relief) is time barred. Under Oklahoma law, a cause of action for an injury based on fraud, misrepresentation or negligence must be brought within two years of its accrual. 12 O.S. §95(A)(3); *Samuel Roberts Noble Foundation, Inc. v. Vick*, 840 P.2d 619, 624 (Okla. 1992). A cause of action for fraud accrues when, "in the exercise of reasonable diligence, it could have or should have been discovered." *States Resources Corp. v. McCollum*, No. CIV-05-647 M, 2006 WL 2927880 at *2 (W.D. Okla. Oct. 11, 2006); 12 O.S. §95(A)(3). A claim for misrepresentation of a written agreement is discoverable when the agreement is available to the plaintiff. *See Matter of Woodward*, 549 P.2d 1207, 1209 (Okla. 1976).

CFP argues that the statute of limitations on its claim for fraud, negligent misrepresentation and fraudulent misrepresentation did not commence until May 6, 2016, when the APA closed. Doc. 20 at 7. However, the allegations in its First Amended Complaint (including ¶18 of the original Complaint) establish that CFP's predecessor in interest, Marcain, became aware of all

relevant facts giving rise to its claim for fraud, misrepresentation and negligence by—at the earliest—April 21, 2016, when the Receiver first presented the TSA to Marcain and represented that he could enforce the restrictive covenants and—at the latest—May 3, 2016, when the Receiver wrote the Bank and its counsel stating, *inter alia*, that "[Marcain] will sign the TSA. . . . They will pay my fees monthly. . . . If there is a challenge to the [Restrictive Covenants], then we will defend that."  *See* FAC ¶51, *supra*.

This lawsuit was filed May 7, 2018—more than two years after either date. Accordingly, CFP's claims for fraud, misrepresentation and negligence are time-barred.

### b. Assignability of Tort Claim

The Bank also argues that CFP lacks standing to assert any tort claims because Oklahoma law prohibits the assignment of tort claims. *See* 12 O.S. §2017(D) ("The assignment of tort claims not arising out of contract is prohibited."). *See also Lester v. Minnesota Life Ins. Co.*, 13-CV-443-JED-PJC (N.D. Okla. Jan. 14, 2014) 2014 WL 183937 at *3 (holding that plaintiff could not maintain tort claims for fraud, bad faith, emotional distress or duress based upon assignment because Oklahoma law prohibits the assignment of tort claims); *Transcontinental Gas Pipe Line Co., LLC v. Kibby Welding, LLC*, 18-CV-445-CVE-FHM (N.D. Okla. Aug. 8, 2019) 2019 WL 3754422 at *2 (holding that a party may not allege breach of contract and fraud claims based on identical facts, and the claims must be sufficiently distinct in order for a party to simultaneously maintain claims for both breach of contract and fraud.)

Citing *Momand v. Twentieth Century Fox Film Corp.*, 37 F. Supp. 649 (W.D. Okla. 1941), and *Chimney Rock Ltd. Partnership v. Hongkong Bank of Canada*, 857 P.2d 84 (Okla. Civ. App. 1993), CFP argues that the tort claims at issue in this case are assignable because they arise out of contract. However, CFP's reliance on these cases is misplaced. *Momand* was decided long before

the 1984 enactment of 12 O.S. §2017(D), and permitted the assignment of a claim under the Sherman Anti-Trust Act. 37 F. Supp. at 657. Furthermore, the court in *Momand* concluded that because the right of action created by Section 7 of the Sherman Anti-Trust Act arose out of contract and did not sound in tort, it was assignable. *Id.* at 658.

Similarly, in *Chimney Rock*, the Oklahoma Court of Appeals held that, because the plaintiffs asserted a claim for tortious interference based on defendant's alleged conspiracy to cause a breach of contract, "the basis of the wrong was a contract." 857 P.2d at 88.

Here, CFP's Fifth Claim for Relief for "Fraud/Constructive Fraud/Negligent Misrepresentation/Fraudulent Misrepresentation" is based on Marcain's assignment of the tort claims to CFP, in contravention 12 O.S. §2017(D). Accordingly, those claims are subject to dismissal.

### V. Conclusion

For the reasons set forth above, the Bank's Motion to Dismiss Amended Complaint (Doc. 16) is granted.

ENTERED this 17th day of June, 2020.

TERENCE C. KERN
United States District Judge